UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICKY KAMDEM-OUAFFO,

                                        Plaintiff,

            v.

PEPSICO, INC. and ITS AFFILIATES, DR.
PETER S. GIVEN, JR., DR. NAIJIE
ZHANG, SCENTSATIONAL
TECHNOLOGIES LLC, STEVEN M.
LANDAU, JOHN DOE, and/or JANE DOE,

                                        Defendants.

Case No. 14-CV-227 (KMK)

OPINION & ORDER

Appearances:

Ricky Kamdem-Ouaffo, PhD
New Brunswick, NJ
*Pro se Plaintiff*

Robert L. Maier, Esq.
Jennifer C. Tempesta, Esq.
Richard B. Harper, Esq.
Baker Botts LLP
New York, NY
*Counsel for Defendants Pepsico, Inc., Dr. Peter S. Given, Jr., and Dr. Naije Zhang*

Melvin C. Garner, Esq.
Cameron S. Reuber, Esq.
Lauren B. Sabol, Esq.
Leason Ellis LLP
White Plains, NY
*Counsel for Defendants ScentSational Technologies LLC and Steven M. Landau*

Joel B. Rothman, Esq.
Seiden, Alder & Matthewman, P.A.
Boca Raton, FL
*Counsel for Defendant ScentSational Technologies LLC*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Ricky Kamdem-Ouaffo ("Plaintiff") bring this Second Amended Complaint ("SAC") against Pepsico, Inc. ("PepsiCo"), Dr. Peter S. Given, Jr. ("Dr. Given"), Dr. Naijie Zhang ("Dr. Zhang"), ScentSational Technologies LLC ("ScentSational"), and Steven M. Landau ("Landau") (collectively, "Defendants"), asserting unenforceable contract, unjust enrichment, constructive trust, correction of inventorship, and defamation.  (Dkt. No. 52). Before the Court are two Motions to Dismiss Plaintiff's Second Amended Complaint (collectively, "Motions"), one on behalf of ScentSational and Landau ("ScentSational Defendants") and one on behalf of PepsiCo, Dr. Given, and Dr. Zhang ("PepsiCo Defendants"). (Dkt. Nos. 72, 75.)  For the following reasons, Defendants' Motions are granted, and Plaintiff's Second Amended Complaint is dismissed with prejudice.

## I.  Background

### A.  Factual Background

The factual allegations that follow are derived from Plaintiff's Second Amended Complaint, which the Court assumes to be true for the purpose of deciding the instant Motions.

Plaintiff, a resident of New Brunswick, New Jersey, "has many years of experience in the research and development, manufacturing, analysis[,] and application of flavors and aromas." (Pl.'s Second Am. Compl. ("SAC") ¶ 3 (Dkt. No. 52).)  From July 14, 2008 to September 28, 2009, Plaintiff worked under contract as a "Food Scientist at . . . PepsiCo's Research and Development facility in Valhalla, New York."  (*Id.* ¶ 22.)  In that capacity, Plaintiff was tasked with "provid[ing] leadership and strategy for developing [and] evaluating commercially viable Aroma Technology Delivery System[s] applicable to PepsiCo's commercial items."  (*Id.* ¶ 27.)

Prior to beginning his work at PepsiCo, Plaintiff signed a "Staffing Supplier Employee Agreement Regarding Confidentiality and Intellectual Property" ("Agreement") with PepsiCo through Subex Technologies, Inc. ("Subex") "as the [s]taffing [a]gency." (*Id.* ¶ 23 (internal quotation marks omitted).) Plaintiff signed the Agreement on July 9, 2008, at which time Subex managers explained that, pursuant to the Agreement, "Plaintiff in principle consented to assigning his future intellectual property to PepsiCo for commercial use in exchange [for] payment to be made to . . . Plaintiff in the future." (*Id.* ¶¶ 23–24.) Plaintiff alleges there was also "[a] common understanding" that should intellectual property created by Plaintiff during the period of his contract "be found patentable," PepsiCo would "credit" Plaintiff as the inventor. (*Id.* ¶ 25.)

During the period of his employment as a "Food Scientist[,]. . . Plaintiff pioneered, conceptualized, designed, demonstrated, proved, executed, and implemented aroma concepts, technologies, and techniques . . . that none of [PepsiCo's] employees [had] been able to do prior to . . . Plaintiff's work." (*Id.* ¶ 29.) Plaintiff received $82,142 in compensation for his work, or $56,384 in take-home pay, which amounted to only a percentage of the $133,007.50 Plaintiff alleges he is owed under an unsigned purchase order. (*Id.* ¶¶ 52–53, 186–87.)[1]

At some point prior to or on September 16, 2009, PepsiCo Defendants, at the direction of PepsiCo senior managers, "expunged . . . Plaintiff's name from" intellectual property Plaintiff created during his employment. (*Id.* ¶¶ 32, 34.) In subsequent patent applications, PepsiCo credited these inventions to Dr. Given and Dr. Zhang, though allegedly neither "contribute[d] to

---

[1] Plaintiff alleges that he received only 42.39% of the amount he alleges he is owed under an unsigned purchase order ("Purchase Order"), but by the Court's calculation, Plaintiff received 61.76%, as Plaintiff does not allege that the Purchase Order indicated that Plaintiff was to receive $133,007.50 *after* taxes. (SAC ¶ 53.) Nonetheless, Plaintiff alleges that he is the owner of the remaining percentage of his intellectual property. (*Id.*)

the creation and/or inventions of" that intellectual property.  (*Id.* ¶ 32.)  Specifically, Plaintiff

alleges that Dr. Given provided "no intellectual input or supervision" when "Plaintiff created and

conceptualized his inventions and reduced them to practice," and "Dr. Zhang was not even an

employee of PepsiCo" during that time period.  (*Id.* ¶ 33.)

   Plaintiff further alleges that the removal of his name from the intellectual property was

part of a coordinated attempt by PepsiCo to distance itself from Plaintiff.  On the same day that

PepsiCo managers removed Plaintiff's name certain intellectual property, Dr. Given allegedly

sent an email to his colleagues that said:  "'Another hitch – [Plaintiff's] contract is terminating

Oct[ober] 5, and he'll be informed this week . . . more drama!  Please do not distribute this info,

but [it] may impact our decision on inventorship.'"  (*Id.* ¶ 8 (italics omitted).)[2]  Dr. Zhang

allegedly sent a similar email, stating that "'[Plaintiff] is not [the] inventor.  He is just involved

in the project . . . .'"  (*Id.* ¶ 9 (third alteration in original) (italics omitted).)  Plaintiff contends

that around this time an unnamed PepsiCo employee secretly entered a notation in Plaintiff's

personnel file reading "Dept. not satisfied," which erroneously suggested Plaintiff's work had

been unsatisfactory.  (*Id.* ¶ 38 (italics omitted).)

   On or around September 23, 2009, five days before the expiration of Plaintiff's contract,

PepsiCo Human Resources Manager Aida Costello allegedly told Plaintiff that he was

"'culturally unfit'" for employment, "being a black male [with] an opinion on scientific matters

that was contrary to that of his peers of [another] skin color," and that he "needed to be

'coached.'"  (*Id.* ¶ 64–66 (alteration omitted).)  Plaintiff likewise alleges that PepsiCo's decision

not to credit Plaintiff for his claimed inventions stemmed from "raw racism . . . directed against

---

[2] As outlined below, Plaintiff's contract was scheduled to terminate on September 28, 2009, not on October 5, 2009.  (*See* SAC ¶¶ 35–36.)

people," like Plaintiff, "who are of the genetics . . . and appearance that [D]efendants don't like." (*Id.* ¶ 71.)

On September 28, 2009, Plaintiff's work assignment contract expired and was not renewed. (*Id.* ¶¶ 35–36.)[3]  At that time, Plaintiff sent a letter to PepsiCo in which he made an "authorship claim on any current or future work resulting in . . . flavor encapsulates or . . . aroma delivery systems because [he] single-handedly demonstrated the need for such when no one at PepsiCo had [them] in mind . . . ." (*Id.* ¶ 62 (first and second alterations in original) (emphasis and internal quotation marks omitted).)  A few months later, on December 18, 2009, PepsiCo Defendants allegedly wrote in a letter to the United States government that "Plaintiff was not able to do work, and was not creative . . . by comparison to his counter parts [sic] of . . . other skin color[s]." (*Id.* ¶ 67.)  According to the SAC, PepsiCo also represented that Plaintiff went "to work at [its] facilities just for the pretense and opportunity of predatory sexual intercourse with women of . . . other [races]." (*Id.* ¶ 253; *see also id.* ¶¶ 68, 274, 311.)

Thereafter, PepsiCo filed for five patents with the United States Patent and Trademark Office ("USPTO") based on the intellectual property at issue, one of which, a patent application for "Releasable Entrapment of Aroma Using Polymeric Matrix," was granted on July 2, 2013 (US Patent No. 8,474,637 B2). (*See id.* ¶¶ 41, 47, 60.)[4]  In connection with the patent

---

[3] Plaintiff alleges that his contract was allowed to expire "because in doing so the termination would then work synergistically with [PepsiCo's] evil desires to seize control of . . . Plaintiff's [intellectual property]." (SAC ¶ 118.)  However, as outlined above, Plaintiff simultaneously suggests that there may have been a race-based motive behind the contract's expiration without renewal or offer of a permanent position.

[4] The other patent applications are as follows: one for "Releasably Encapsulated Aroma" (US Patent App. No. US 13/56,551 A1), one for "Complex Coacervates and Aqueous Dispersion of Complex Coacervates and Methods of [M]aking Same" (US Patent App. No. 13/272,270), and two for "Coacervates Complex, Methods [a]nd Food [P]roducts" (US Patent App. Nos. 13/175,508 and 13/175,451).  (SAC ¶¶ 48, 60.)

applications, Dr. Given and Dr. Zhang allegedly each signed or cosigned "Inventor's Oath[s] or Declaration[s]," including a "Joint Inventor's Declaration," for the granted patent.  (*Id.* ¶¶ 44–48.)  Dr. Given and Dr. Zhang also allegedly executed and filed an assignment of the relevant intellectual property to PepsiCo.  (*Id.* ¶¶ 49–50.)

On October 11, 2012, Plaintiff submitted a request to PepsiCo, asking that it amend the relevant "patent applications and patents thereof from which [it] . . . removed . . . Plaintiff's name" to credit him as the inventor.  (*Id.* ¶ 55; *see also id.* ¶ 56.)  PepsiCo did not reply to this request, nor did it "make the amendment and correction of inventorship requested."  (*Id.* ¶ 59.)  Nonetheless, Plaintiff alleges that he is the "true inventor" of both the patented property and the property described in the four pending patent applications.  (*Id.* ¶ 93; *see also id.* ¶¶ 60, 107–08.)

B. Procedural History

Plaintiff commenced the instant Action on January 31, 2014 against PepsiCo, Dr. Given, and Dr. Zhang, alleging six causes of action arising out of his temporary work assignment for PepsiCo.  (Dkt. No. 1.)  On March 14, 2014, the same day that PepsiCo Defendants first requested a pre-motion conference, (Dkt. No. 8), Plaintiff filed his First Amended Complaint ("FAC"), alleging thirteen causes of action, specifically "breach of intellectual property agreement," "wrongful appropriation of plaintiff's intellectual property," "fraudulent obtaining of signature," "correction of inventorship," "unjust enrichment," "the necessity of constructive trusts," a "request for subpoenas," three causes of action relating to alleged false statements made to the USPTO, and three causes of action relating to other alleged criminal conduct.  (Dkt. No. 9.)  Pursuant to a scheduling order set at the pre-motion conference held on May 15, 2014, (Dkt. No. 31), PepsiCo Defendants filed their Motion To Dismiss and Memorandum of Law on June 6, 2014, (Dkt. Nos. 34–35) as well as an associated Declaration on June 9, 2014, (Dkt. No.

37).  On July 9, 2014, Plaintiff submitted a "Notice of Counterclaim . . . in Support of the Denial of the Defendants' Motion to Dismiss," in addition to an Affidavit and Memorandum of Law in support of that submission.  (Dkt. Nos. 41–43.)  Along with these papers, Plaintiff submitted a "Proposed Amended Complaint" that added ScentSational and Landau as Defendants while alleging virtually identical conduct as that laid out in his First Amended Complaint ("Revised FAC").  (Pl.'s Mem. of Law in Supp. of Pl.'s Countercl. and in Supp. of Denial of Defs.' Mot. To Dismiss Ex. 1 (Dkt. No. 43).)[5]  PepsiCo Defendants filed their Reply on August 8, 2014. (Dkt. No. 46.)

Without accepting the Revised FAC for filing but nonetheless considering its allegations, the Court dismissed Plaintiff's FAC without prejudice on March 9, 2015.  (Dkt. No. 50.)[6]  In that Opinion & Order, this Court granted Plaintiff leave to file a Second Amended Complaint "that specifically addresses the deficiencies identified" as well as to "renew his request to join [ScentSational] and [Landau] and file claims against them."  *Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14-CV-227, 2015 WL 1011816, at *18 (S.D.N.Y. Mar. 9, 2015).

---

[5] Plaintiff had previously filed a letter requesting permission to join ScentSational and Landau as co-defendants in this Action, (*see* Letter from Plaintiff to Court (March 24, 2014) (Dkt. No. 18)), after, according to PepsiCo Defendants, he "discover[ed] an unrelated action involving . . . PepsiCo currently pending in this Court," (PepsiCo Defs.' Mem. of Law in Supp. of Motion To Dismiss Pl.'s Second Am. Compl. ("PepsiCo Defs.' Mem.") 4 (Dkt. No. 76).)

[6] Because PepsiCo Defendants reviewed and responded to Plaintiff's Revised FAC in their Reply, (Dkt. No. 46), the Court chose to consider the claims contained therein, together with those contained in the FAC, *see Paul v. Bailey*, No. 09-CV-5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) (considering "factual allegations made by [the] pro se [p]laintiff in [the plaintiff's] opposition papers" because they were "consistent with those in the initial complaint and amended complaints" (italics omitted)); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012) ("[B]ecause a pro se plaintiff's allegations must be construed liberally[,] it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint." (italics omitted)).

On March 25, 2015, Plaintiff filed his SAC, alleging five causes of action arising out of his temporary work assignment at PepsiCo and joining ScentSational and Landau as additional Defendants.  (Dkt. No. 52.)  Pursuant to a briefing schedule set by the Court on May 11, 2015, (Dkt. No. 71), ScentSational Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint and supporting papers on June 15, 2015. (Dkt. Nos. 72–74.)  Also on that date PepsiCo Defendants filed their separate Motion to Dismiss Plaintiff's Second Amended Complaint and supporting papers.  (Dkt. Nos. 75–77.)  On July 21, 2015, Plaintiff filed a "Memorandum of Law in Support of the Denial of the PepsiCo Defendants' Motion to Dismiss," (Dkt. No. 86), along with a Motion to Intervene and/or Consolidate, (Dkt. Nos. 84–85).[7] Without the Court's leave, he also submitted a Proposed Second Amended Complaint With More Definitive Statements ("Revised SAC").  (Mot. to Am. Compl. Ex. 1–2 (Dkt. No. 81).)[8]

---

[7] On December 5, 2013, ScentSational commenced an action in this Court against PepsiCo and some of its affiliates, alleging misappropriation of trade secrets, breach of contract, unfair competition, unjust enrichment, constructive trusts, and correction of inventorship. (Dkt. No. 1 (13-CV-8645 Dkt.).)  Some of the allegations in that suit relate to PepsiCo's filing of United States Patent No. 8,474,637 and United States Patent Application No. 13/223,834, both of which Plaintiff addresses in the instant Action.  (*See, e.g.*, SAC ¶¶ 96–113.)  This other case is currently pending before this Court under the caption, *ScentSational Technologies, LLC v. PepsiCo, Inc., et al.*, No. 13-CV-8645.

[8] For the purposes of resolving the instant Motions, the Court does not consider Plaintiff's Revised SAC.  (Dkt. No. 81.)  Pursuant to Federal Rule of Civil Procedure 15(a)(2), a plaintiff may amend his or her complaint "only with the opposing party's written consent or the court's leave."  *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) ("It is within [the court's] discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss."), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223 (2013); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("When the moving party has had an opportunity to assert the amendment earlier . . . a court may exercise its discretion more exactingly.").  Here, however, Plaintiff received neither the Court's permission nor Defendants' consent to amend the SAC.  (*See* Dkt.)  Rather, he simply elected to submit yet another Proposed Amended Complaint, but this time doing so well after Defendants had filed their Motions, a tactic that has no support in the law.  *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying leave to amend because "permitting the

Defendants submitted separate Reply Memoranda of Law in Support of their own Motions to

Dismiss on July 29, 2015, (Dkt. Nos. 87– 88), and PepsiCo Defendants filed their Memorandum

of Law in Opposition to Plaintiff's Motion to Intervene and/or Consolidate, (Dkt. No. 89).  In a

separate opinion, the Court has denied Plaintiff's Motion to Intervene and/or Consolidate.

II. Discussion

A. <u>Standard of Review</u>

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations,

citations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

---

proposed amendment would have been especially prejudicial given the fact that . . . [the defendant] had already filed a motion for summary judgment"); *PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 765 (S.D.N.Y. 1995) (denying the "plaintiff's motion to amend . . . because its timing demonstrates that it is clearly a dilatory tactic to avoid the dismissal of this action"); *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 167 (S.D.N.Y. 1990) ("When the motion [to amend] is made after discovery has been completed and a motion for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to [the] defendant.").  Furthermore, the purportedly more definitive statements contained in the Revised SAC ultimately offer "no clue as to how the [SAC]'s defects would be cured."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Denial of leave might be proper . . . where the request gives no clue as to how the complaint's defects would be cured." (citation and internal quotation marks omitted)).  While this Court previously did Plaintiff a courtesy in "consider[ing] the allegations and claims contained in the [Revised SAC] together with those contained in [the FAC]" despite never having granted him leave to amend, *Kamdem-Ouaffo*, 2015 WL 1011816, at *5, notions of fair play require rejection of this untimely attempt to once again skirt proper procedure, *see In re Gildan Activewear, Inc. Sec. Litig.*, No. 08-CV-5048, 2009 WL 4544287, at *5 (S.D.N.Y. Dec. 4, 2009) ("To the extent [the p]laintiffs argue that they should have yet another bite at the apple after having had the additional benefit of the [c]ourt's explication of the shortcomings of the complaint, such a position must be rejected, as it is by now well-established that plaintiffs are not entitled to an advisory opinion from the [c]ourt informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." (internal quotation marks omitted)).

9

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true

10

. . . ." (alterations and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a complaint was filed pro se, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted).

Additionally, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

B.  <u>Unenforceable Contract, Unjust Enrichment, and Constructive Trust Claims</u>

As in the FAC, Plaintiff alleges against PepsiCo Defendants several causes action arising out of the Agreement. [9]  The Court, once again, finds that these allegations of unenforceable contract, unjust enrichment, and constructive trust fail to state a claim upon which relief may be granted.

1.  Res Judicata

First and foremost, Plaintiff's claims of unenforceable contract, unjust enrichment, and constructive trust, all of which relate to the Agreement, are barred by res judicata because they were or could have been raised by Plaintiff in a prior proceeding.  Under the federal rules of res judicata, a subsequent lawsuit will be barred where a party can show:  (1) an adjudication on the merits in the previous action; (2) that the previous lawsuit involved the same parties, or those in privity with them; and (3) that the claims asserted in the subsequent suit were raised, or could have been raised, in the prior proceeding.  *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).[10]  "The rationale underlying this principle is that a party who has been given

---

[9] As Plaintiff himself affirms, these first three causes of action "do[] not include ScentSational . . . and/or . . . Landau" since neither has made claims regarding "some sort of enforceable contractual obligation" with Plaintiff.  (SAC ¶¶ 155, 242, 263; *cf.* ScentSational Defs.' Mem. of Law in Supp. of Motion To Dismiss Pl.'s Second Am. Compl. ("ScentSational Defs.' Mem.") 6 n.3 (Dkt. No. 73).)  Plaintiff further affirms that he never had "any . . . interactions with ScentSational . . . during [his] work at PepsiCo." (SAC ¶ 81.)  Accordingly, the Court addresses his claims for unenforceable contract, unjust enrichment, and constructive trust as to PepsiCo, Dr. Given, and Dr. Zhang only.

[10] New York state law governs the Agreement, (*see* Decl. of Jennifer C. Tempesta, Esq. in Supp. of PepsiCo Defs.' Mot. To Dismiss ("Tempesta Decl.") Ex. 1 ("Agreement") Attachment B ¶ K (Dkt. No. 76) ("THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK . . . .")), and, given that federal and New York doctrines of res judicata are "virtually identical," the Court applies the federal rules of res judicata in this contract suit, *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 452 (S.D.N.Y. 2010); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (analyzing a res judicata claim under federal law because "there is no

a full and fair opportunity to litigate a claim should not be allowed to do so again." *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005).

In September 2010, Plaintiff filed a lawsuit in the New York Supreme Court, alleging a number of causes of action against PepsiCo. *See Kamdem-Ouaffo v. PepsiCo, Inc.*, No. 22625/2010 (N.Y. Sup. Ct. 2010); *see also Kamdem-Ouaffo*, 2015 WL 1011816, at *4 n.9 (discussing this state court action). Most relevant here, Plaintiff's complaint alleged that PepsiCo breached the employment contract by terminating Plaintiff prior to the contract's end date and that PepsiCo violated New York's Whistle Blower statute by terminating him before the contract expired and by refusing to consider him for a permanent position. (*See* Tempesta Decl. Ex. 4 ("N.Y. Judgment") 3.)[11] Plaintiff not only readily acknowledges this prior proceeding, (*see, e.g.*, SAC ¶¶ 38, 71 n.1, 112), but also notes that "[t]he said [summary judgment] motion at the Supreme Court of the State of New York was granted in favor of PepsiCo," (*id.* ¶ 144). In fact, even prior to the state court's ruling on PepsiCo's motion for summary judgment, Plaintiff

_____

discernible difference between federal and New York law concerning res judicata"); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal law, the doctrine of res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (italics, alteration, and internal quotation marks omitted)).

[11] In deciding PepsiCo's motion for summary judgment, the New York Supreme Court noted that the complaint arose "from Plaintiff's work as a Food Science Chemist in [PepsiCo]'s Research and Development [f]acility in Valhalla, New York . . . under a contract." (N.Y. Judgment 2.) The first and second causes of action concerned PepsiCo's alleged breach of that contract, (*id.*), and in resolving the instant Motion, the Court takes judicial notice of the fact that the prior lawsuit contained such information, *see Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)); *Corley v. Jahr*, No. 11-CV-9044, 2013 WL 265450, at *6 (S.D.N.Y. Jan. 24, 2013) (taking judicial notice of a state court decision in resolving a Rule 12(b)(6) motion), *adopted by* 2013 WL 1453367 (S.D.N.Y. Mar. 28, 2013); *Faulkner v. Verizon Commc'n, Inc.*, 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001) (explaining that a court "may take judicial notice of pleadings in other lawsuits attached to the defendants' motion to dismiss, as a matter of public record").

13

agreed to the dismissal of his breach of contract claims.  (*See* N.Y. Judgment 13.)[12]  With regard to Plaintiff's Whistle Blower allegations, PepsiCo argued, inter alia, that these claims should be dismissed because Plaintiff's termination resulted from the expiration of the temporary employment contract and not as a retaliatory measure by the defendant.  (*See id.* (noting PepsiCo's argument that "the expiration of that agreement was not an adverse change").)  On July 8, 2013, the state court dismissed these claims, (*see id.* at 40), concluding "there is no triable issue of fact that [PepsiCo] did not engage in retaliation based on its failure to either renew Plaintiff's contract or offer Plaintiff another permanent position as a result of Plaintiff's Whistle Blower activity," (*see id.* at 32).

In addition to involving the same parties and thereby satisfying the second element of res judicata, the prior proceeding also satisfies the first, as the state court evaluated the merits of Plaintiff's contract claims against PepsiCo and found his allegations lacking.  *See Kamdem-Ouaffo v. Pepsico, Inc.*, 21 N.Y.S.3d 150, 154 (App. Div. 2015) (affirming that PepsiCo "established its prima facie entitlement to judgment as a matter of law dismissing the remaining causes of action to recover damages for[, inter alia,] breach of contract").[13]  As to the third prong

_____

[12] It bears noting that voluntary withdrawal of claims can constitute a final adjudication on the merits for res judicata purposes.  *See Hughes v. Lillian Goldman Family, LLC*, 153 F. Supp. 2d 435, 449 (S.D.N.Y. 2001) (dismissing claims under doctrine of res judicata where the "plaintiff withdrew those very claims"); *Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Found.*, No. 95-CV-7214, 1995 WL 688958, at *4 (S.D.N.Y. Nov. 21, 1995) (determining that res judicata applies where the party "voluntarily withdrew its claims" in a prior proceeding).

[13] Though Plaintiff indicates he has "appealed from the decision granting . . . PepsiCo's . . . motion," (SAC ¶ 145), such an appeal does not affect the judgment's finality under either New York or federal law, *see Arnold v. Beth Abraham Health Servs., Inc.*, No. 09-CV-6049, 2009 WL 5171736, at *4 (S.D.N.Y. Dec. 30, 2009) ("Under New York law, the pendency of an appeal does not deprive a challenged judgment of preclusive effect."), *aff'd sub nom. Arnold v. 1199 SEIU*, 420 F. App'x 48 (2d Cir. 2011); *In re Parmalat Sec. Litig.*, 493 F. Supp. 2d 723, 737 (S.D.N.Y. 2007) ("Courts long have held that the pendency of an appeal ordinarily does not

of the test, in considering whether Plaintiff's claims asserted in a subsequent suit were, or could

have been, raised in a prior proceeding, the Court considers "whether the underlying facts are

'related in time, space, origin, or motivation;' whether they form a convenient trial unit; and

whether their treatment as a unit conforms to the parties' expectations." *Waldman v. Vill. of

Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*,

107 F.3d 86, 90 (2d Cir. 1997)).  Notably, "[r]es judicata does not require the precluded claim to

actually have been litigated." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 626

(2d Cir. 2007) (italics omitted); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394,

398 (1981) (affirming that res judicata extends to all claims that "*were or could have been* raised

in that [prior] action" (emphasis added)).  In this way, the doctrine applies "not only as to what

was pleaded, but also as to what could have been pleaded." *In re Teltronics Servs., Inc.*, 762

F.2d 185, 193 (2d Cir. 1985); *see also Magi XXI, Inc. v. Stato Della Citá Del Vaticano*, 22 F.

Supp. 3d 195, 205 (E.D.N.Y. 2014) (same).  Additionally, "the facts essential to the barred

second suit need not be the same as the facts that were necessary to the first suit.  It is instead

enough that the facts essential to the second were [already] present in the first." *Waldman*, 207

F.3d at 110–11 (alteration in original) (emphasis and internal quotation marks omitted).  "Even

claims based upon different legal theories are barred provided they arise from the same

transaction or occurrence [as the claims previously raised]." *L-Tec Elecs. Corp. v. Cougar Elec.

Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999); *see also Waldman*, 207 F.3d at 110 ("[A] plaintiff

cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on

different legal theories . . . ."); *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991) ("[I]t is

---

suspend the preclusive effect of an otherwise final judgment."), *aff'd sub nom. Bondi v. Capital
& Fin. Asset Mgmt. S.A.*, 535 F.3d 87 (2d Cir. 2008); *Aaron v. Aaron*, 768 N.Y.S.2d 739, 741
(App. Div. 2003) ("[A]bsent a stay, the pendency of an appeal from [a] judgment does not alter
the finality or enforceability of that judgment.").

the *factual* predicate of the several claims asserted that determines whether res judicata will apply, not a litigant's ability to devise a new legal theory." (internal quotation marks and some italics omitted)).

In seeking to differentiate the two suits, Plaintiff underscores that the state court "declined to exercise jurisdiction over the matters related to [p]atent[s]." (Pl.'s Mem. of Law Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") 10–11 (Dkt. No. 86).) Yet, notwithstanding Plaintiff's insistence otherwise, (*see, e.g.*, *id.* at 11 ("All causes of actions and the relief sought []in . . . Plaintiff's SAC are related to [a patent].")), this Court's original jurisdiction over such subject matter, pursuant to 28 U.S.C. § 1338(a), has no bearing on the three contract-related claims at issue here. Plaintiff's claims for unenforceable contract, unjust enrichment, and constructive trust pertain to the Agreement, not to patents also at issue in this case. (*See, e.g.*, SAC ¶ 14 ("Plaintiff alleges that the said [Agreement] was/is invalid and/or unenforceable and/or voidable.")). Considering that state courts are competent to entertain contract suits, *see Gottlieb v. Carnival Corp.*, 436 F.3d 335, 337 (2d Cir. 2006) (noting "state courts are courts of general jurisdiction"), it is clear Plaintiff could have, but did not, assert those claims in his prior suit against PepsiCo.

These claims "arise out of the same factual predicate as the original claims," *L-Tec Elecs.*, 198 F.3d at 88, namely Plaintiff's work assignment contract. It is well-settled that multiple claims based upon a single contract are considered part of the same transaction, unless the plaintiff could not have asserted a claim in the original action. *See Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990) (explaining that, in a suit for breach of contract, "res judicata will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first suit"). As discussed above, Plaintiff *could have* raised these contract claims in

16

the state court since the underlying contract pre-dated that suit.  For whatever reason he did not, and instead he now puts forth allegations that similarly relate to the Agreement.  Thus, because the instant Action's claims for unenforceable contract, unjust enrichment, and constructive trust "share a common nucleus of operative facts with the prior one," *Waldman*, 207 F.3d at 108, these three causes of action are barred by res judicata.

        2.   <u>Validity of the Agreement</u>

        Even if res judicata did not preclude Plaintiff from raising these claims here, the causes of actions that arise out of the Agreement would fail nonetheless.

        a.   <u>Unenforceable Contract Claim</u>

        In its prior Opinion dismissing Plaintiff's contract claim, this Court held that "Attachment B is a clear and explicit assignment of all intellectual property from Plaintiff to PepsiCo," *Kamdem-Ouaffo*, 2015 WL 1011816, at *11, thereby upholding the validity of the Agreement, *see id.* at *13 (concluding that "the Agreement governs Plaintiff's rights to the intellectual property at issue"); *id.* at *14 ("[B]y operation of Attachment B, Plaintiff has no remaining ownership interest in the intellectual property at issue.").  While "Plaintiff challenges the validity and enforceability of Attachment B," (SAC ¶ 153), the SAC ultimately offers no new factual allegations to alter the Court's prior conclusion.  Plaintiff himself asserts that "[i]t is substantially supported by the same factual background of the [FAC]."  (*Id.* ¶ 153.)  Indeed, his bare allegations of "lack of [m]utual [a]ssent, failure to disclose material facts to . . . Plaintiff, [and] ambiguity," (*id.* ¶ 159 (internal quotation marks omitted)), are no more than "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration and internal quotation marks omitted).  As such, his unsubstantiated challenges to the validity of the Agreement fail to establish any right to relief.

On one hand, Plaintiff alleges lack of mutual assent on the basis that "he was never given the opportunity to review the entire [Agreement]" and thus did not fully understand its content. (SAC ¶ 167; *see also* Pl.'s Opp'n 10 ("Plaintiff was never provided a copy of the executed agreements until during discovery of the [state court] lawsuit.").)  However, under New York law, "[a] party's failure to read or understand a contract that it signs does not relieve it of its obligation to be bound by the contract."  *In re Lehman Brothers Inc.*, 478 B.R. 570, 587 n.19 (S.D.N.Y. 2012), *aff'd sub nom. In re Leham Bros. Holdings Inc.*, 761 F.3d 303 (2d Cir. 2014); *see also Brandywine Pavers, LLC v. Bombard*, 970 N.Y.S.2d 653, 655 (App. Div. 2013) ("A party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents." (alterations and internal quotation marks omitted)); *Superior Officers Council Health & Welfare Fund v. Empire HealthChoice Assurance, Inc.*, 927 N.Y.S.2d 324, 326 (App. Div. 2011) ("[P]arties are presumed to know the contents of the agreements they have signed."), *aff'd*, 959 N.E.2d 511 (N.Y. 2011).  Accordingly, Plaintiff's contention that he did not read or understand the entirety of the "voluminous document," (SAC ¶160), by itself, does not void the Agreement.  Because Plaintiff provides no other reason to invalidate the Agreement, it should be enforced according to its terms.  *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (enforcing an agreement against a party who claimed that "she did not read the entire . . . [a]greement" before signing it); *Martin v. Creative Mgmt. Grp., Inc.*, No. 10-CV-2214, 2010 WL 2629580, at *2 (S.D.N.Y. June 29, 2010) ("[A] person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms." (internal quotation marks omitted)).[14]

_____

[14] Though "Plaintiff alleges that PepsiCo used an unfair advantage based on its financial

In addition, Plaintiff "seek[s] to have the contract voided by the Court and/or found to be unenforceable" due to an alleged breach of "an implied covenant of good faith and fair dealing between PepsiCo and . . . Plaintiff." (SAC ¶¶ 205, 208.) Yet, under New York law, only parties to a contract can be held liable for breach of the implied covenant of good faith and fair dealing. *See Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 727 (S.D.N.Y. 2014) (holding that "an action for breach of the implied covenant of good faith and fair dealing of [an] agreement cannot lie against" those who were not party to it); *Am.-European Art Assocs., Inc. v. Trend Galleries, Inc.*, 641 N.Y.S.2d 835, 836 (App. Div. 1996) (dismissing a "cause of action for breach of an implied duty of good faith and fair dealing by [the] defendants" due to the absence "of a valid and binding contract from which such a duty would arise"). The plain terms of the Agreement make clear that PepsiCo and its employees were *not* a party to the work assignment contract. (*See, e.g.*, Agreement, at Attachment B (referring to "my employer, the Staffing Supplier named below"); *id.* at Attachment C ¶ 1("I understand that I am an employee of the Staffing Supplier [Subex,] and I am not an employee of PepsiCo.").) This Court, in fact, has already determined that "under the plain terms of the Agreement, PepsiCo cannot be liable for any breach of contract under the Agreement, *to which it was not a party.*" *Kamdem-Ouaffo*, 2015 WL 1011816, at *7 (emphasis added).[15] Furthermore, while Plaintiff accurately notes that

---

status and also used unfair assumptions to get the [Agreement] from the Plaintiff," (SAC ¶ 185), he provides no specific allegations to support that contention. Therefore, the Court need not accept that mere legal conclusion as true. *See Iqbal*, 556 U.S. at 678 (reaffirming that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

[15] Notwithstanding Plaintiff's allegation to the contrary, PepsiCo Defendants have no "burden of proving that they were mere passive third[-]party beneficiar[ies]." (Pl.'s Opp'n 12.) Rather, the Agreement here speaks for itself. Moreover, Plaintiff acknowledges Subex was his employer, noting, for example, that "Subex . . . issued W-2s for . . . Plaintiff." (SAC ¶ 195.) *See also Kamdem-Ouaffo*, 2015 WL 1011816, at *7 (noting that, as an exhibit to his Revised FAC,

a valid contract requires "an intent to be bound," (SAC ¶ 157 (citing *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (App. Div. 2009))), there is no specific allegation that PepsiCo Defendants manifested such intent that could impose contractual obligations on them.[16]  Because they were not parties to the Agreement, Plaintiff cannot state a contractual claim for breach of the implied covenant of good faith and fair dealing against PepsiCo, Dr. Given, and Dr. Zhang.

Plaintiff also claims the Agreement is unenforceable because "there was no definiteness" as to his compensation.  (*Id.* ¶ 196.)  However, this Court already determined that the Agreement did indeed specify his compensation.  *See Kamdem-Ouaffo*, 2015 WL 1011816, at *10 (recognizing the $82,142 that Plaintiff received "as compensation" to be "the consideration that he was promised on the face of the Agreement").  Moreover, as this Court also previously held, "[u]nder the Agreement, Plaintiff was clearly an employee of Subex, and not of PepsiCo."  *Id.* at *7.  Precisely because the Agreement unambiguously indicates Plaintiff's employer as Subex, not PepsiCo, (*cf.* SAC ¶ 208 (acknowledging that "PepsiCo did not directly sign . . . Attachment

---

"Plaintiff included a 2008 W–2[,] . . . which identifies Subex, rather than PepsiCo, as Plaintiff's employer").

[16] Generally a party who is not a signatory to a contract cannot be held liable under the contract, though "[a]n exception to this general rule exists when a non-signatory is found to have manifested an intent to be bound by the contract."  *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009).  As noted, Plaintiff has not alleged any conduct by PepsiCo Defendants that calls for this exception.  *See, e.g., D'Antonio v. Metro. Transp. Auth.*, No. 06-CV-4283, 2008 WL 582354, at *7 (S.D.N.Y. Mar. 4, 2008) (concluding the non-signatory was not liable under its subsidiary's contract where the plaintiffs did not sufficiently allege that the parent manifested an intent to be bound); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 73 (S.D.N.Y. 1999) (holding that a "non-signatory to a contract can be named as a defendant in a breach of contract action" where the non-signatory "attended meetings . . . and participated in the negotiations and drafting" of the contract); *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 946 (S.D.N.Y. 1994) (noting that a non-signatory parent corporation can be bound by a contract if it participates in the negotiations but has a subsidiary, which is a proxy of the parent, sign the contract).  Bare assertions like "PepsiCo was heavily involved in the process of interviewing and selecting . . . Plaintiff" are simply not enough to bind Defendants under the Agreement.  (Pl.'s Opp'n 23.)

B")), no parol evidence is "admissible to suggest that PepsiCo promised that Plaintiff's name would remain on his inventions, or that PepsiCo owed him compensation *as his employer*," *Kamdem-Ouaffo*, 2015 WL 1011816, at *9; *see also Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 436 (N.Y. 2013) (affirming that "evidence outside the four corners of the document" is admissible to modify or contradict a written agreement "only if a court finds an ambiguity in the contract"). For these reasons, the Court again rejects Plaintiff's attempt to challenge the definiteness of the Agreement.

Lastly, Plaintiff alleges that PepsiCo Defendants "voided the contract" through "either fraud in the execution or fraud in the inducement, with respect to []Attachment B." (SAC ¶¶ 212, 221.) Yet, such allegations once again fail to meet the heightened pleading standard required for fraud claims. *See Kamdem-Ouaffo*, 2015 WL 1011816, at *12 ("It long has been clear that '[a]llegations of fraud are subject to a heightened pleading standard.'" (alteration in original) (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013))); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). To survive a motion to dismiss a fraud-based claim, "a party must state with particularity the circumstances constituting fraud, . . . which . . . requires the plaintiff to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata*, 723 F.3d at 197 (internal quotation marks omitted). Though he claims "the way Defendants worked the fraud was that they first expunged the Plaintiff's name from his inventions," (SAC ¶ 219), Plaintiff, for a second time, fails to satisfy the fourth prong of the pleading standard in not specifying any federal or state law that Defendants have violated, *see Kamdem-Ouaffo*, 2015 WL 1011816, at *12 ("Plaintiff does

21

not explain how PepsiCo's actions were fraudulent given that an assignee of intellectual property is permitted to make a patent application" (citing 35 U.S.C. § 118 ("A person to whom the inventor has assigned . . . the invention may make an application for patent."))).  Even had Plaintiff intended to allege common law fraud under New York law, he nonetheless fails to allege facts that establish the elements of such a claim, as the SAC, like the FAC, does not allege reliance on a misrepresentation of material fact or resulting economic detriment.  *See id.* (noting that "the elements of a common law fraud claim are: (1) a misrepresentation of material fact, (2) made with fraudulent intent, (3) upon which the plaintiff reasonably relies to his (4) economic detriment" (internal quotation marks omitted)).

Given these considerations, Plaintiff cannot sustain a claim for an unenforceable contract even if it were not barred by res judicata.

### b.  Unjust Enrichment Claim

Having reaffirmed the enforceability of the Agreement in the absence of any new factual allegations, the Court again rejects Plaintiff's unjust enrichment claim.  *See id.* at *13 (dismissing Plaintiff's unjust enrichment claim).  The SAC alleges that "Defendants[,] or at least some of . . . Defendants, have been and continue to be unjustly enriched by asserting . . . they own and/or are inventors of Plaintiff[']s [i]ntellectual [p]roperty."  (SAC ¶ 261.)  Yet, as previously noted by this Court, the remedy of "[u]njust enrichment is not available where there is a valid contract between the parties covering the same subject matter."  *Arbitron, Inc. v. Kiefl*, No. 09-CV-4013, 2010 WL 3239414, at *7 (S.D.N.Y. Aug. 13, 2010); *see also Am. Med. Ass'n v. United Healthcare Corp.*, No. 00-CV-2800, 2007 WL 683974, at *10 (S.D.N.Y. Mar. 5, 2007) ("[D]ecisions both in New York state courts and in [the Southern District of New York] have consistently held that claims for unjust enrichment may be precluded by the existence of a

22

contract governing the subject matter of the dispute . . . .").  As discussed above and in its prior decision by this Court, the Agreement "contractually transferred [Plaintiff's] intellectual property to PepsiCo." *Kamdem-Ouaffo*, 2015 WL 1011816, at *11.  This valid contract thus governs Plaintiff's rights to the subject matter at issue and precludes this second cause of action, regardless of the applicability of res judicata.

### c.  Constructive Trust Claim

Plaintiff repeats his earlier claim that he is entitled to a constructive trust related to certain patents outlined in the SAC.[17]  Yet, as with the remedy of unjust enrichment, it is well-settled that a constructive trust cannot be imposed where a valid agreement covers the subject matter of the dispute.  *See In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004) ("[W]here a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists" such that "a constructive trust should not be imposed." (internal quotation marks omitted)); *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013) (dismissing a claim for constructive trust because "[the plaintiff] has a contractual claim against [the defendant]"); *Spanierman Gallery, PSP v. Love*, No. 03-CV-3188, 2003 WL 22480055, at *4 (S.D.N.Y. Oct. 31, 2003) (dismissing a constructive trust claim because, under New York law, the "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events

---

[17] It is not helpful to Plaintiff that the vast majority of his allegations in support of this cause of action are simply copied from the bare assertions he sought to use to establish his unjust enrichment claim.  (*Compare* SAC ¶¶ 244–60, *with id.* ¶¶ 265–82.)  Indeed, Plaintiff repeats the exact claims he put forth in the FAC, which this Court has already dismissed.  *See Kamdem-Ouaffo*, 2015 WL 1011816, at *13–15 (dismissing Plaintiff's claims for unjust enrichment and constructive trust).

arising out of the same subject matter" (internal quotation marks omitted)).[18]  The equitable

remedy of a constructive trust is unavailable in the instant Action precisely because of the

Agreement.  (*See* Agreement, at Attachment B ¶ A (assigning to PepsiCo any "right, title[,] and

interest in and to *all* . . . 'Intellectual Property' . . . conceived . . . during the period of such work

or performance of assignments" (emphasis added)).)  Therefore, res judicata aside, Plaintiff's

constructive trust claim fails.  *See Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d

222, 235 (E.D.N.Y. 2013) (rejecting a constructive trust claim because "[i]t is well established

that the existence of a contract precludes a claim for a constructive trust").

C.  Correction of Inventorship

Repeating yet another claim from the dismissed FAC, Plaintiff seeks correction of

ownership for at least two intellectual property items outlined in the SAC.[19]  He alleges that,

"[i]n view of . . . 35 U.S.C § 261, . . . Plaintiff still has interest in the patents and patent

applications of . . . Plaintiff[']s [intellectual property] that he created at PepsiCo."  (SAC ¶ 212.)

Even taking as true that "it is undisputed . . . Plaintiff is the true inventor of the two patents" at

---

[18] It also bears noting that "a claim of constructive trust under New York law requires [p]laintiffs to show unjust enrichment."  *In re Lehman Bros. Holdings Inc.*, 541 B.R. 551, 581 (S.D.N.Y. 2015); *see also Turner v. Temptu Inc.*, No. 11-CV-4144, 2013 WL 4083234, at *10 n.3 (S.D.N.Y. Aug. 13, 2013) ("Under New York law, a constructive trust will not be imposed absent a finding of unjust enrichment."), *aff'd*, 586 F. App'x 718 (2d Cir. 2014).

[19] Plaintiff asserts that "[t]his cause of action definitely applies to all parties, including ScentSational . . . and . . . Landau."  (SAC ¶ 284; *cf.* ScentSational Defs.' Mem. 1 ("The only claims asserted against ScentSational and . . . Landau relate to the correction of inventorship of a PepsiCo patent and patent application.").)  While doubting that Plaintiff's speculation can give rise to a plausible claim for relief against ScentSational or Landau, (*see, e.g.*, SAC ¶ 289 ("Plaintiff alleges that ScentSational . . . and . . . Landau would have to prove that . . . Landau meets the requirement to be inventor of the 'processes' and 'methods' of the patents in dispute.")), the Court nonetheless addresses the claim for correction of inventorship as to all named Defendants.  It bears noting that the analysis is the same in dismissing this cause of action against any Defendant; Plaintiff cannot correct a pending or abandoned patent, and he must have an interest in order to challenge a granted patent.

issue, (*id.* ¶ 108), the Court, for the same reasons as before, dismisses this cause of action, *see*

*Kamdem-Ouaffo*, 2015 WL 1011816, at *14 (dismissing correction of inventorship claim on the

basis that § 256 "does not provide a private right of action to challenge inventorship of a pending

patent application" and because Plaintiff assigned his intellectual property rights to PepsiCo, he

lacks standing to make a claim" as to the single issued patent (internal quotation marks omitted)).

To the extent that Plaintiff seeks to once again bring a correction of inventorship claim

for any patent application referenced in the SAC, (*see, e.g.*, SAC ¶¶ 48, 60), such an attempt

must be denied.  As this Court has already emphasized, there is no "private right of action to

challenge inventorship of a pending patent application."  *HIF Bio, Inc. v. Yung Shin Pharm.*

*Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010); *see also Kamdem-Ouaffo*, 2015 WL 1011816,

at *14 ("Plaintiff cannot bring a cause of action for a correction of inventorship for the four

pending patent applications.").  This is equally true for abandoned patents, as "a district court

lacks jurisdiction to review the inventorship of an unissued patent."  *Camsoft Data Sys., Inc. v. S.*

*Elecs. Supply, Inc.*, 756 F.3d 327, 335 (5th Cir. 2014) (alteration and internal quotation marks

omitted), *cert. denied*, 135 S. Ct. 1162 (2015); *see also E.I. Du Pont de Nemours & Co. v.*

*Okuley*, 344 F.3d 578, 584 (6th Cir. 2003) (same). [20]  Accordingly, Plaintiff cannot bring a

---

[20] ScentSational Defendants note that one referenced "[a]pplication was deemed
abandoned by the [USPTO] on February 24, 2015."  (ScentSational Defs.' Mem. 6; *cf.* Decl. of
Melvin C. Garner, Esq. in Supp. of ScentSational Defs.' Mot. To Dismiss Ex. B ("Notice of
Abandonment") (Dkt. No. 74).)  In this context, "abandoned" means that the application is no
longer pending and thus cannot mature into registration, *see Abandoned Applications*, United
States Patent and Trademark Office, http://www.uspto.gov/trademarks-application-
process/abandoned-applications (last visited Jan. 18, 2016), a fact of which the Court may take
judicial notice, *see Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y.
2010) ("The [c]ourt may properly take judicial notice of official records of the [USPTO] and the
United States Copyright Office.").

Because "abandonment to the public . . . destroy[s] the plaintiff's right to take a patent,"
*Kendall v. Winsor*, 62 U.S. 322, 327 (1858), Plaintiff cannot seek correction of ownership over
the pending application, *see* 35 U.S.C. § 133 ("Upon failure of the applicant to prosecute the

correction of inventorship claim for *any* of the referenced patent applications, whether pending or otherwise.

While 35 U.S.C. § 256 "provides a private right of action to challenge inventorship" for *issued* patents, *Kamdem-Ouaffo*, 2015 WL 1011816, at *14 (internal quotation marks omitted), "a plaintiff seeking correction of inventorship under § 256 can pursue that claim in federal court only if the requirements for constitutional standing—namely injury, causation, and redressability—are satisfied," *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326 (Fed. Cir. 2009). As before, the Court finds that Plaintiff lacks standing to make such a claim because, pursuant to the Agreement, he assigned his patent rights to PepsiCo. (*See generally* Attachment B.) Plaintiff thus has no remaining ownership interest in the disputed intellectual property, including the "patent from . . . Plaintiff's intellectual property [that] was granted on July 2, 2013 as US Patent No. 8,474,637 B2." (SAC ¶ 41; *cf. id.* ¶ 18 ("Defendants have already been granted a utility patent by the [USPTO] as Patent No. US 8,474,637 B2.").)

Furthermore, Plaintiff's conclusory allegations of "damages in terms of the loss of the ownership, inventorship, recognition, and the honor for his valuable, marketable, confidential, patentable and now patented [i]ntellectual [p]roperty" do not suffice, (SAC ¶ 304), as the Agreement unmistakably leaves Plaintiff with none of the requisite interests for standing, *see Larson*, 569 F.3d at 1327 (concluding that the plaintiff "has no financial interest in the patents sufficient for him to have standing to pursue a § 256 claim"); *Jim Arnold Corp. v. Hydrotech*

---

application within six months after any action therein . . . or within such shorter time, . . . as fixed by the Director in such action, the application shall be regarded as abandoned by the parties thereto."). As ScentSational Defendants note, "[i]t is well-established that this Court cannot correct inventorship on a patent application, particularly when the application has been abandoned and its subject matter is part of the public domain." (ScentSational Defs.' Mem. 1; *see also id.* at 7 ("There is no means or mechanism by which the Court can 'revive' an abandoned patent application for any purpose, including to correct inventorship.").)

*Sys., Inc.,* 109 F.3d 1567, 1572 (Fed. Cir. 1997) (finding the plaintiff lacked standing to pursue a

patent infringement claim where he had assigned away all his patent rights and thus did not have

an ownership interest in the patents); *Swanson v. ALZA Corp.*, No. 12-CV-4579, 2013 WL

968275, at *4 (N.D. Cal. Mar. 12, 2013) ("Where an inventor assigns all of his interest in an

invention to others, he retains no financial interest in the patents and therefore no interest

sufficient for him to have standing to pursue a § 256 claim." (internal quotation marks omitted)).

In light of this principle, Plaintiff's correction of inventorship claim is dismissed.

D.  Defamation

As the one fresh cause of action presented in the SAC, Plaintiff alleges that "[PepsiCo]

Defendants knowingly and willfully made written false statements against . . . Plaintiff to attack

. . . Plaintiff's performance on his job and profession, and to attack . . . Plaintiff's moral

character."  (SAC ¶ 308.) [21]  However, his defamation action comes too late and, furthermore,

fails to state a viable claim.

1.  Statute of Limitations

According to Plaintiff, "[t]he said written defamatory statements were made [by PepsiCo

Defendants] to the United States government in a document dated 12/18/2009."  (*Id.*; *see also id.*

¶ 39 ("PepsiCo and its protégés publically and deceitfully made representation[s] . . . in a letter

dated 12/18/2009.").)  New York Civil Practice Law and Rules ("CPLR") § 215(3) requires that

an action for defamation "be commenced within one year," that is, within one year of the original

---

[21] Plaintiff notes that "[t]his cause of action does not include ScentSational . . . and/or
. . . Landau," as neither "make[s] use anywhere of the job performance and sexual defamation
that PepsiCo and its protégés wrote to the US government."  (SAC ¶ 306; *cf.* ScentSational
Defs.' Mem. 6 n.3 ("To the extent that such information exists, ScentSational has no knowledge
of it, had not made any use of it, and does not intend to make any such use of this information").)
The Court accordingly addresses the defamation claim only as to PepsiCo, Dr. Given, and Dr.
Zhang.

publication of the statements.  *See Melious v. Besignano*, 4 N.Y.S.3d 228, 229 (App. Div. 2015) ("A cause of action alleging defamation is governed by a one-year statute of limitations . . . [that] accrues at the time the alleged statements are originally uttered."); *see also Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 596–97 (S.D.N.Y. 2014) ("Under CPLR § 215(3), a claim for libel must be asserted within one year of the date on which the libelous material first was published, that is, displayed to a third party." (internal quotation marks omitted)), *appeal dismissed* (Feb. 26, 2015).  Notwithstanding that Plaintiff allegedly "discovered in 2012 that on 12/18/2009 [PepsiCo] Defendants had written to the United States government," (SAC ¶ 67; *see also* Pl's Opp'n 26 (stating that the document "was discovered as part of a judicial proceeding [before] the State Supreme Court")), any action for defamation accrued when the alleged statements were first *published* such that he needed to commence suit within one year of December 18, 2009. [22]  A later discovery of defamatory material does not toll the one-year statute of limitations.  *See Teneriello v. Travelers Cos.*, 641 N.Y.S.2d 482, 483 (App. Div. 1996) ("Contrary to [the] plaintiff's contention, the action accrued when the statements were originally published . . . , not upon [the] plaintiff's discovery of the statements two years later."); *Karam v. First Am. Bank of N.Y.*, 593 N.Y.S.2d 640, 642 (App. Div. 1993) ("In an action for slander, the [s]tatute of [l]imitations runs from the time of the utterance, not the discovery of the slanderous matter.").

---

[22] Though Plaintiff repeatedly refers to December 18, 2009 as "the day that [D]efendants falsely accused [him] before the US government," (SAC ¶ 203; *see also id.* ¶ 201 ("PepsiCo acted corruptly against the Plaintiff by falsely accusing . . . Plaintiff to the US government on 12/18/2009")), the SAC at one point suggests that the "document . . . was received by the United States government no later than 01/05/2010," (*id.* ¶ 308).  Even if the Court accepted the later date as tolling the statute of limitations, the action would still be barred as commenced well beyond the one year permitted under CPLR § 215(3).  *See Tucker*, 52 F. Supp. 3d at 596 (holding "defamation claims are barred by the statute of limitations insofar as they are based on communications made more than one year before this action was commenced").

Attempting to keep alive his defamation claim, Plaintiff asserts that, pursuant to "CPLR [§] 203(g), Plaintiff has two years from the date of imputation to commence action." (Pl's Opp'n 26.) This reliance on CPLR § 203(g) is misplaced, however, as § 215 does not provide that the statute of limitations for defamation accrues from discovery.[23] Again, the case law is clear: a defamation claim has a one-year statute of limitation that "accrues on the date of the first publication." *Gelbard v. Bodary*, 706 N.Y.S.2d 801, 802 (App. Div. 2000); *see also E.B. v. Liberation Publ'ns, Inc.*, 777 N.Y.S.2d 133, 134 (App. Div. 2004) ("The accrual of a cause of action for libel occurs upon the 'publication' of the offending material, which has been repeatedly defined as the date on which the offending material was placed on sale or became generally available to the public."); *Kilbourne v. State*, 443 N.Y.S.2d 538, 540 (N.Y. Ct. Cl. 1980) ("It is not disputed that a cause of action in defamation accrues on the dates of publication of the alleged libelous statement or the date the allegedly slanderous matter is uttered."). Moreover, Plaintiff cannot seek to evade the statute of limitations through allegations that "[u]p to this date, . . . [D]efendants continued to defame . . . Plaintiff in written documents." (SAC ¶ 254.) Under New York law, "a cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception." *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 205 (E.D.N.Y. 1998); *see also Nussenzweig v.*

---

[23] CPLR § 203(g) provides, in relevant part, that "where the time within which an action must be commenced is computed from the time when facts were discovered . . . the action must be commenced within two years after such actual or imputed discovery. . . ." The rule, therefore, merely "provides the general method of computing periods of limitation." *Bluefin Wear, Inc. v. Tuesday's Child Boutique, Inc.*, 946 N.Y.S.2d 65, at *3 (N.Y. Sup. Ct. 2011) (unreported table opinion); *see also Patten v. Hamburg OB/GYN Grp., P.C.*, 856 N.Y.S.2d 748, 750 (App. Div. 2008) (reaffirming that "CPLR [§] 203 is not a tolling or extension provision" (internal quotation marks omitted)). In doing so, it "operates in tandem with those statutes of limitation that provide for accrual of the cause of action on discovery; it does not operate alone to create a new standard of measure." *Huebner v. Caldwell & Cook, Inc.*, 526 N.Y.S.2d 356, 359 (N.Y. Sup. Ct. 1988). CPLR § 203(g) thus does not supplant the single publication rule of § 215. *See Melious*, 4 N.Y.S.3d at 229.

*diCorcia*, 878 N.E.2d 589, 590 (N.Y. 2007) ("[T]he single publication rule . . . states that a cause

of action for defamation accrues on the date the offending material is first published").[24]  It is

thus clear that Plaintiff's defamation action accrued on December 18, 2009.

Plaintiff filed the SAC on March 25, 2015, meaning that any claims for defamation prior

to March 25, 2014 are time barred.  Because Plaintiff's allegations here all rest on "the same

12/18/2009 letter to the United States government," (SAC ¶ 68), the Court dismisses this final

cause of action.

### 2.  Failure to State a Claim

In addition to being time barred, Plaintiff's defamation action fails to state a viable claim.

"To establish a claim for defamation under New York law, a plaintiff must prove that:  (1) the

defendant published a defamatory statement of fact to a third party, (2) that the statement of fact

was false, (3) the false statement of fact was made with the applicable level of fault, and (4)

either the false statement was defamatory per se or caused the plaintiff special harm."  *Medcalf v.*

*Walsh*, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013).

In the instant Action, Plaintiff cannot satisfy these elements because the document to

which Plaintiff refers as containing "the job performance and sexual defamations" does not

actually contain such statements.  (SAC ¶ 306.)[25]  The SAC alleges that PepsiCo defamed him

---

[24] Moreover, Plaintiff does not identify any particular defamatory statement made after
December 2009.  *See Germain v. M & T Bank Corp.*, —F. Supp. 3d—, 2015 WL 3825198, at
*21 (S.D.N.Y. June 19, 2015) (holding that, under the federal notice pleading standard, a
"complaint must at least identify the allegedly defamatory statements" (internal quotation marks
omitted)); *In re Residential Capital, LLC*, No. 12-CV-12020, 2015 WL 1087746, at *4 (Bankr.
S.D.N.Y. Mar. 9, 2015) (noting that "a complaint for defamation must, on its face, specifically
identify what alleged defamatory statements were made, by whom, and to whom" (internal
quotation marks omitted)).

[25] After the conclusion of his temporary work assignment in September 2009, Plaintiff
instituted administrative proceeding against PepsiCo with the Occupational Safety & Health
Administration ("OSHA"), alleging unlawful retaliation.  In response to Plaintiff's allegations,

"by stating . . . that . . . Plaintiff is a Food Scientist with 'unsatisfactory performance,'" (*id.* ¶ 181 (italics omitted)), and by "represent[ing] in the same 12/18/2009 letter to the United States government that . . . Plaintiff was going to work . . . only for the purpose of predatory sexual intercourse," (*id.* ¶ 68 (italics omitted)).  In fact, the referenced letter merely articulates PepsiCo's "legitimate, non-retaliatory reasons for not offering a permanent, full-time position to [Plaintiff]."  (PepsiCo's Letter 13.)[26]  "A statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts is protected as a statement of opinion and thus not a false statement of fact." *Medcalf*, 938 F. Supp. 2d at 486 (alteration and internal quotation marks omitted) (quoting *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1168 (N.Y. 1993)).  Describing in detail Plaintiff's work history, (*see* PepsiCo's Letter 2–7), PepsiCo's Letter never "implies a basis in facts which are not disclosed to the reader or listener," *Gross*, 623 N.E.2d at 1168; *see also Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact.").  Examining the statements in context, it is clear that "the unfavorable assessment of his work performance in the letter amounted to a nonactionable expression of opinion." *Ott v. Automatic Connector, Inc.*, 598 N.Y.S.2d 10, 11 (App. Div. 1993); *see also id.* ("An employer has the right to assess an employee's performance on the job without judicial

---

PepsiCo submitted a statement of position to OSHA on December 18, 2009.  (*See* Tempesta Decl. Ex. 3 ("PepsiCo's Letter").)

[26] Specifically, PepsiCo's Letter notes that "[Plaintiff] was thought of as being overly deliberate, unable to successfully multi-task, unable to effectively communicate, unsuited for a fast-paced environment, exhibited unprofessional and inappropriate behavior, and failed to follow directions."  (PepsiCo's Letter 13.)  While Plaintiff repeatedly alleges that PepsiCo labeled him a "sexual predator" in that document, (SAC ¶ 317), PepsiCo's Letter contains no such statement.

interference."). For that reason, Plaintiff's defamation claim would fail regardless of its

untimeliness, and the Court thus dismisses this final cause of action. [27]

### III. Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss are granted, and Plaintiff's

Second Amended Complaint is dismissed with prejudice.[28] The Clerk of the Court is

---

[27] PepsiCo Defendants additionally note that, even if Plaintiff's claim were timely and did in fact state a claim for defamation, the statements at issue would be subject to "the absolute privilege that affords protection to statements 'made prior to, in the institution of, or during the course of a proceeding'" because they were made to OSHA. (*See* PepsiCo Defs.' Mem. 15 (citing *Arya v. Ensil Technical Servs., Inc.*, No. 12-CV-925S, 2012 WL 6690326, at *4 (W.D.N.Y. Dec. 19, 2012) (applying absolute privilege to OSHA proceedings)).) The Court has no need to consider the merits of this argument.

[28] Had the Court considered Plaintiff's Revised SAC, the outcome here would be the same. The repetitive nature of the supposedly more definitive statements (many of which were copied directly from earlier paragraphs in the SAC) does nothing "to cure those deficiencies" that led to this dismissal. *In re Gildan Activewear*, 2009 WL 4544287, at *5.

Along these lines, the Court dismisses Plaintiff's SAC with prejudice because "[t]he problem with [his] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (dismissing with prejudice a pro se complaint that was "not simply 'inadequately or inartfully pleaded,' but rather contain[ed] substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013). Moreover, the Court has given Plaintiff two bites at the apple, and there is no need for a third bite. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988) (noting that a complaint may be dismissed with prejudice "where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible"); *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) (dismissing an amended complaint with prejudice where the "[p]laintiff has already been given one opportunity to amend his complaint . . . , and there is nothing in his second amended complaint suggesting that [he] could do better given another opportunity"); *Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where "[the plaintiff] has already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"); *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the plaintiff failed to cure the deficiencies identified in his initial complaint despite "being given ample opportunity to do so"); *Treppel v. Biovail Corp.*, No. 03-CV-3002, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (finding "that leave to amend

respectfully requested to terminate the pending Motions, (*see* Dkt. Nos. 72, 75), and close the

case.

SO ORDERED.

DATED:      January 26, 2016
            White Plains, New York


KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

would be futile because [the] plaintiff has already had two bites at the apple and they have
proven fruitless.").

33